WMP:PEN/AFMLS
F.# 2010R02302

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

    - against -

LASHA GOLETIANI,
    also known as "John,"
ZHAN PETROSYANTS,
    also known as "John" and
    "Janik,"
ROBERT PETROSYANTS and
ELDAR AKHMEDOV,
    also known as "Edik" and
    "Eddy,"

              Defendants.

- - - - - - - - - - - - - - - -X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 06 2013 ★

BROOKLYN OFFICE

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 11-591 (S-2)(FB)
(T. 18, U.S.C. §§ 371, 982(a)(1),
982(b), 1956(h), 2 and 3551 et
seq.; T. 31, U.S.C., §§ 5317(c),
5324(a)(2) and 5324(d)(2); T.
21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

### INTRODUCTION

        At all times relevant to this Indictment, unless otherwise indicated:

I.   Background

    A.   The Money Laundering Control Act

        1.   The Money Laundering Control Act, codified in relevant part at Title 18, United States Code, Section 1956, was a set of laws enacted by Congress aimed at stopping criminally derived funds from being converted to money or property that has the appearance of legitimacy.

B.    The Bank Secrecy Act

2.    The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5313-5326, was a set of laws and regulations enacted by Congress to address an increase in money laundering through financial institutions.

3.    Check cashers qualified as financial institutions within the meaning of the BSA.  A check casher was someone engaged in the business of cashing checks for other people in amounts greater than $1,000 in currency or other monetary instruments, for any person, on any day, in one or more transactions.  A check casher would typically charge a fee for this service.  Check cashers enabled people to cash checks without conducting transactions through a bank.

4.    One of the BSA mechanisms to uncover criminal activity conducted through financial institutions was a requirement that check cashers and other financial institutions file with the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Department of the Treasury, a FinCEN Form 104, which is entitled a "Currency Transaction Report" ("CTR"), for any transaction involving more than $10,000 in currency.

5.    Title 31, United States Code, Section 5313(a) and related regulations, including Title 31, Code of Federal Regulations ("C.F.R."), Section 1010.313(a)-(b), effective Mar. 1, 2011, formerly Title 31, C.F.R., Section 103.22(c), required financial

2

institutions, including check cashers, to treat multiple currency transactions as a single transaction and to file a CTR if the financial institution had knowledge that the multiple transactions were by or on behalf of any one person and resulted in cash in or cash out totaling more than $10,000 during any one business day.

6.    Each CTR consisted of three parts.  Part I required the financial institution to verify and accurately record the name and address of the individual who conducted a reportable currency transaction, as well as to accurately record the identity, social security number, or taxpayer identification number of any person or entity on whose behalf the currency transaction was conducted.  Part II required the financial institution to record the date, the amount of the transaction and the form of the transaction.    Part III required identifying the name of the financial institution where the transaction occurred, the person completing the CTR and the person approving the completion and filing of the CTR.

C.    No-Fault Insurance

7.    Under New York State's "no-fault" insurance law, an insurance company that insured a vehicle involved in an accident was required to provide reimbursement of up to $50,000 per vehicle occupant for the occupant's "basic economic loss."  Basic economic loss included expenditures for a number of different types of accident-related medical treatments and services, provided that

3

these treatments and services were necessary and were actually provided. Because reimbursement payments were made without regard to the fault of the driver, insurance plans under this law were commonly referred to as "no-fault" coverage.

8. Under New York State law, a vehicle occupant could assign his or her right to reimbursement from an insurance company to others, including, but not limited to, medical facilities that performed treatment and medical supply companies that provided medical equipment for their injuries. If such an assignment were made, the medical facility or medical supply company, or its agent, would bill the insurance company directly for services rendered or for equipment that was provided and receive payment directly from the insurance company. Under certain circumstances, the medical facility or medical supply company would be entitled to bill the insurance company for an amount up to 150 percent of the costs incurred for the services rendered or the equipment provided.

9. No-fault insurance plans provided by private insurance companies under New York State law are health care benefit programs within the meaning of Title 18, United States Code, Sections 1347 and 1349.

10. "No-fault patients," who were victims or purported victims of motor vehicle accidents, assigned their claims for no-fault reimbursement to their health care providers, which

4

included, among others, medical doctors, chiropractors, psychologists, psychiatrists, physical therapists and acupuncturists. The no-fault patients also assigned their claims for no-fault reimbursement to medical equipment suppliers who provided them with durable medical equipment ("DME"), which included, among other items, crutches, neck braces, whirlpools, infrared heating lamps and foam mattresses.

D. The "J-1 Visa Holders," "Legal
Permanent Residents" and "Shell Companies"

11. A "J-1 visa" was a short-term, non-immigrant visa issued by the United States government to foreign nationals participating in cultural exchange programs. The "J-1 visa holders" were individuals, whose identities are known to the Grand Jury, who were required to leave the United States after the expiration of their visas.

12. The "legal permanent residents" were individuals, whose identities are known to the Grand Jury, who were permanent United States residents without United States citizenship.

13. The "Shell Companies" were corporations established in the names of the J-1 visa holders and legal permanent residents. These companies purported to be engaged, for the most part, in the wholesale provision of DME to medical equipment providers and services related to the operation of medical clinics, including, but not limited to, office supplies, advertising, computer and

5

billing-related services. In truth and in fact, these companies engaged in little, if any, legitimate business and maintained few, if any assets.

## II. The Defendants and Relevant Entities

14. The defendant ROBERT PETROSYANTS was an owner and manager of medical billing companies, including Right Choice Consulting, Inc. and DJR Capital Group, Inc. (hereinafter collectively referred to as the "Petrosyants Billing Companies").

15. The defendant ZHAN PETROSYANTS, also known as "John" and "Janik," the twin brother of the defendant ROBERT PETROSYANTS, was a manager of the Petrosyants Billing Companies.

16. The defendant ELDAR AKHMEDOV, also known as "Edik" and "Eddy," was the listed owner of a medical equipment supply company named Med Help Supply, Inc. ("Med Help"). Med Help provided DME to no-fault patients.

17. The defendant LASHA GOLETIANI, also known as "John," established check cashing accounts at Belair Payroll Services, Inc. ("Belair") in the names of the Shell Companies. GOLETIANI, along with the defendant ZHAN PETROSYANTS, also known as "John" and "Janik," received checks from the defendant ROBERT PETROSYANTS made payable to the Shell Companies and cashed those checks at Belair, receiving cash in amounts exceeding $10,000 in a single day. For a fee, GOLETIANI allowed individuals to write checks from corrupt

6

medical clinics to the Shell Companies in order to disguise the origin and purpose of the funds.

18. Belair was a check cashing business incorporated in the State of New York on or about August 12, 1997. Belair's principal place of business was located in Flushing, New York. Belair was a financial institution, as that term is defined in Title 31, United States Code, Section 5312(a)(2)(k), and accompanying regulations. As a result, Belair was subject to the CTR filing requirements of the BSA. The "Flushing Manager," an individual whose identity is known to the Grand Jury, was the manager of Belair's principal place of business.

III. The Fraudulent Schemes

    A.   The Money Laundering Scheme

19. In or about and between May 2009 and June 2011, the defendants LASHA GOLETIANI, also known as "John," ZHAN PETROSYANTS, also known as "John" and "Janik," ROBERT PETROSYANTS and ELDAR AKHMEDOV, also known as "Edik" and "Eddy," together with others, engaged in a scheme to file with insurance companies false and inflated no-fault claims, including false and inflated claims for reimbursement for DME provided to no-fault patients. Specifically, GOLETIANI, ZHAN PETROSYANTS, ROBERT PETROSYANTS and AKHMEDOV, together with others, deposited and caused to be deposited into the accounts of various medical and DME providers, including Med Help,

7

checks issued by insurance companies in settlement of no-fault claims assigned to those providers, which included reimbursements for false and inflated claims.

20.   To conceal the nature, source and true ownership of the funds received from the false and inflated no-fault claims, the defendants LASHA GOLETIANI, also known as "John," ZHAN PETROSYANTS, also known as "John" and "Janik," ROBERT PETROSYANTS and ELDAR AKHMEDOV, also known as "Edik" and "Eddy," together with others, converted insurance checks for no-fault claims into untraceable cash, in part by causing checks to be written to the Shell Companies that were later cashed at Belair.

21.   On  numerous  occasions,  the  defendant  ROBERT PETROSYANTS wrote, and caused to be written, checks from one Shell Company account to another Shell Company account.  Those checks were then cashed at Belair by the defendants LASHA GOLETIANI, also known as "John," and ZHAN PETROSYANTS, also known as "John" and "Janik." At other times, the defendant ROBERT PETROSYANTS wrote, and caused to be written, checks from the medical and DME providers, including Med Help, to the Shell Companies, and those checks were cashed by GOLETIANI  and  ZHAN  PETROSYANTS  at  Belair  without  first  being deposited into any Shell Company account.

8

B.   The False CTR Filing Scheme

22.   In or about and between May 2009 and June 2011, the defendants LASHA GOLETIANI, also known as "John," and ZHAN PETROSYANTS, also known as "John" and "Janik," together with others, cashed the checks written to the Shell Companies at Belair, receiving cash that often exceeded, in the aggregate, $10,000 in a single day. GOLETIANI and ZHAN PETROSYANTS, together with others, caused CTRs to be filed for the check cashing transactions that exceeded $10,000 in a single day, which falsely indicated that the transactions were conducted by the J-1 visa holders and legal permanent residents on behalf of the Shell Companies when, in truth and in fact, they were conducted by GOLETIANI and ZHAN PETROSYANTS.   For example:

a.   On or about August 26, 2009, GOLETIANI caused Belair to file a CTR falsely stating that checks were cashed at Belair in excess of approximately $113,500.00 by the J-1 visa holders and/or legal permanent residents acting on behalf of their respective Shell Companies, when in truth and in fact, the transactions were conducted by GOLETIANI.

b.   On or about January 19, 2010, GOLETIANI caused Belair to file a CTR falsely stating that checks were cashed at Belair in excess of approximately $107,150.00 by the J-1 visa holders and legal permanent residents acting on behalf of their respective Shell

Companies, when in truth and in fact, the transactions were conducted by GOLETIANI.

c.     On or about January 5, 2011, GOLETIANI caused Belair to file a CTR falsely stating that checks were cashed at Belair in excess of approximately $43,289.00 by the J-1 visa holders and/or legal permanent residents acting on behalf of their respective Shell Companies, when in truth and in fact, the transactions were conducted by GOLETIANI.

d.     On or about January 11, 2011, GOLETIANI caused Belair to file a CTR falsely stating that checks were cashed at Belair in excess of approximately $22,135.00 by the J-1 visa holders and/or legal permanent residents acting on behalf of their respective Shell Companies, when in truth and in fact, the transactions were conducted by GOLETIANI.

e.     On or about February 15, 2011, ZHAN PETROSYANTS caused Belair to file a CTR falsely stating that checks were cashed at Belair in excess of approximately $183,592.00 by the defendant ELDAR AKHMEDOV, also known as "Edik" and "Eddy," on behalf of the Shell Corporation held in AKHMEDOV's name, when in truth and in fact, the transactions were conducted by ZHAN PETROSYANTS.

f.     On or about May 9, 2011, GOLETIANI caused Belair to file CTRs falsely stating that checks were cashed at Belair in the amount of $77,799.00 by the J-1 visa holders and/or legal

permanent residents acting on behalf of their respective Shell Companies, when in truth and in fact, the transactions were conducted by GOLETIANI.

       23.  When the defendants LASHA GOLETIANI, also known as "John," and ZHAN PETROSYANTS, also known as "John" and "Janik," cashed the checks at Belair, the relevant J-1 visa holders, in many cases, were no longer present in the United States. In addition, the CTRs filed with respect to certain of the check-cashing transactions failed to indicate the full amount of cash provided to GOLETIANI and ZHAN PETROSYANTS.

COUNT ONE
(Money Laundering Conspiracy)

       24.  The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

       25.  In or about and between May 2009 and June 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LASHA GOLETIANI, also known as "John," ZHAN PETROSYANTS, also known as "John" and "Janik," ROBERT PETROSYANTS and ELDAR AKHMEDOV, also known as "Edik" and "Eddy," together with others, did knowingly conspire to conduct financial transactions in and affecting interstate commerce, to wit: the transfer and delivery of United States currency, which transactions in fact involved the proceeds of specified unlawful activity, to wit:

11

no-fault insurance fraud through the use of the mails, in violation of Title 18, United States Code, Sections 1341, and health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole or in part to (a) conceal or disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and (b) to avoid a federal transaction reporting requirement, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956 (a)(1)(B)(ii).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT TWO
### (Conspiracy to File False CTRs)

26. The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

27. In or about and between May 2009 and June 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LASHA GOLETIANI, also known as "John," and ZHAN PETROSYANTS, also known as "John" and "Janik," together with others, for the purpose of evading the reporting

12

requirements of Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder, did cause and attempt to cause Belair, a domestic financial institution, to file CTRs containing material omissions and misstatements of fact, contrary to Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2).

28. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants LASHA GOLETIANI, also known as "John," and ZHAN PETROSYANTS, also known as "John" and "Janik," committed and caused to be committed, among others, the following:

OVERT ACTS

a. On or about August 26, 2009, GOLETIANI caused Belair to file a CTR stating that checks were cashed at Belair in excess of approximately $113,500.

b. On or about January 19, 2010, GOLETIANI caused Belair to file a CTR stating that checks were cashed at Belair in excess of approximately $107,150.

c. On or about January 5, 2011, GOLETIANI caused Belair to file a CTR stating that checks were cashed at Belair in excess of approximately $43,289.

d. On or about January 11, 2011, GOLETIANI caused Belair to file a CTR stating that checks were cashed at Belair in excess of approximately $22,135.

e.  On or about February 15, 2011, ZHAN PETROSYANTS caused Belair to file a CTR stating that checks were cashed at Belair in excess of approximately $183,592.

f.  On or about May 9, 2011, GOLETIANI met with the Flushing Manager at Belair and directed the Flushing Manager to continue to file CTRs without listing GOLETIANI's name on them and in the names of the Shell Companies and their nominee owners, the J-1 visa holders and legal permanent residents.

g.  On or about May 9, 2011, GOLETIANI caused Belair to file CTRs stating that checks were cashed at Belair in the amount of $77,799.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNTS THREE THROUGH ELEVEN
(Filing False Currency Transaction Reports)

29.  The allegations contained in paragraphs 1 through 23 are realleged and incorporated as if fully set forth in this paragraph.

30.  On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant LASHA GOLETIANI, also known as "John," together with others, did knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder, cause and attempt to cause Belair, a domestic

14

financial institution, to file CTRs that contained material omissions and misstatements of fact, in violation of Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2) and as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period, as specified below:

| Count | Date | Transaction | Aggregate Amount | CTR Nos. |
|-------|------|-------------|------------------|----------|
| THREE | 8/26/2009 | Checks made payable to Shell Companies cashed by Belair | $113,500.00 | 20092446082030 |
| FOUR | 1/19/2010 | Checks made payable to Shell Companies cashed by Belair | $107,150.00 | 20100266115630 |
| FIVE | 1/5/2011 | Checks made payable to Shell Companies cashed by Belair | $43,289.00 | 20110146169130 |
| SIX | 4/12/2011 | Checks made payable to Shell Companies cashed by Belair | $155,071.00 | 20111156360730 20111156360630 20111156360530 20111156360430 20111156360330 |
| SEVEN | 5/2/2011 | Checks made payable to Shell Companies cashed by Belair | $41,452.00 | 20111306121930 20111306121730 |
| EIGHT | 5/20/2011 | Checks made payable to Shell Companies cashed by Belair | $57,271.00 | 20111456036730 20111456036630 20111456036430 |
| NINE | 5/31/2011 | Checks made payable to Shell Companies cashed by Belair | $11,716.00 | 20111570182935 |

| Count | Date | Transaction | Aggregate Amount | CTR Nos. |
|-------|------|-------------|------------------|----------|
| TEN | 6/2/2011 | Checks made payable to Shell Companies cashed by Belair | $135,111.00 | 20111570182635<br>20111570182235<br>20111570182135<br>20111570182035<br>20111570181935 |
| ELEVEN | 6/14/2011 | Checks made payable to Shell Companies cashed by Belair | $129,003.00 | 20111710179435<br>20111710179335<br>20111710179235<br>20111710179135<br>20111710179035 |

(Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

31. The United States hereby gives notice to the defendants LASHA GOLETIANI, also known as "John," ZHAN PETROSYANTS, also known as "John" and "Janik," ROBERT PETROSYANTS and ELDAR AKHMEDOV, also known as "Edik" and "Eddy," that, upon their conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), of all property involved in such offense, and all property traceable to such property. The property to be forfeited should include, but not be limited to the following:

a.    A money judgment which represents the value of the forfeitable property described-above; and

16

b. A 2007 black Lexus model vehicle with New York license plate number EXD4567 and vehicle identification number JTJBT20X470127415.

32. If the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with a third person;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b))

17

CRIMINAL FORFEITURE ALLEGATIONS
AS TO COUNTS TWO THROUGH ELEVEN

33.   The government hereby gives notice to the defendants LASHA GOLETIANI, also known as "John," and ZHAN PETROSYANTS, also known as "John" and "Janik," that, upon their conviction of any of the offenses charged in Counts Two through Eleven, the government will seek forfeiture in accordance with Title 31, United States Code, Section 5317(c), of all property involved in each offense of conviction in violation of Title 31, United States Code, Sections 5324(a)(2) and 5324(d)(2).   The property to be forfeited should include, but not be limited to the following:

a.   A money judgment which represents the value of the forfeitable property described-above; and

b.   A 2007 black Lexus model vehicle with New York license plate number EXD4567 and vehicle identification number JTJBT20X470127415.

34.   If the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with a third person;

18

       c.    has been placed beyond the jurisdiction of the court;

       d.    has been substantially diminished in value; or

       e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 31, United States Code, Section 5317(c); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

                                      UNITED STATES ATTORNEY
                                      28 C.F.R. 0.123

_____
JAIKUMAR RAMASWAMY, CHIEF
ASSET FORFEITURE AND
  MONEY LAUNDERING SECTION
U.S. DEPARTMENT OF JUSTICE

19

# UNITED STATES DISTRICT COURT

### EASTERN District of NEW YORK

THE UNITED STATES OF AMERICA

vs.

LASHA GOLETIANI, et al.,

Defendants.

# I N D I C T M E N T

(T. 18, U.S.C., §§ 371, 982(a)(1), 982(b),
1 1956(h), 2 and 3551 et seq.; T. 31, U.S.C.,
5317(c), 5324(a)(2) and 5324(d)(2); and
T. 21, U.S.C., 853(p))

A true bill.

_____
                                    Foreman

Filed in open court this_____day.
Of_____ A.D. 19_____

_____
                                    Clerk

Bail, $_____

Patricia E. Notopoulos, AUSA 718-254-6354