```
 1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - -   X

 4   UNITED STATES OF AMERICA,   :   CR 11-591(S-2)(FB)

 5                               :

 6
         -against-              :
 7                                   United States Courthouse
                                     Brooklyn, New York
 8   LASHA GOLETIANI            :
     ZHAN PETROSYANTS
 9   ROBERT PETROSYANTS

10                                   February 24, 2014
             Defendants.        :   5:00 o'clock p.m.
11
     - - - - - - - - - - - -   X
12

13               TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE FREDERIC BLOCK
14               SENIOR UNITED STATES DISTRICT JUDGE

15   APPEARANCES:

16

17   For the Government:        LORETTA E. LYNCH
                                United States Attorney
18                              BY: PATRICIA NOTOPOULOS
                                    KEVIN MOSLEY
19                                  RANDALL WARDEN
                                Assistant United States Attorneys
20                              271 Cadman Plaza East
                                Brooklyn, New York
21

22   For the Defendants:        SANFORD TALKIN, ESQ.
                                Attorney for L. Goletiani
23

24                              ALAN FUTERFAS, ESQ.
                                ELLEN RESNICK
25                              Attorneys for Z. Petrosyants
```

GR      OCR      CM      CRR      CSR

APPEARANCES CONTINUED:

                              JAMES FROCCARO, ESQ.
                              Attorney for R. Petrosyants

Court Reporter:          Gene Rudolph
                         225 Cadman Plaza East
                         Brooklyn, New York
                         (718) 613-2538

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.


                         * * * * * *


        THE CLERK:  Criminal cause for pleading, United

States of America versus Lasha Goletiani, Zhan Petrosyants,

and Robert Petrosyants.

        I ask counsel if you can state your appearances for

the record.

        MR. MOSLEY:  Good afternoon, Your Honor.

        Kevin Mosley, Patricia Notopoulos and Randall Warden

for the United States.

        MR. TALKIN:  Sam Talkin for Lasha Goletiani,

standing to my left, Your Honor.  We are complete but there is

going to be applications made today applicable to

Mr. Goletiani so we are here.

        THE COURT:  I can't wait until I hear what they

1   might be.  It is good to have you back in court.  I think we

2   completed the allocution, the plea, the acceptance of the

3   plea.

4          MR. TALKIN:  That's correct.

5          THE COURT:  It's easy to slip up on something if you

6   do things sort of in a scattered way.  You are welcome to come

7   back.  There is no need that I know of but we will see what

8   happens.

9          MR. FUTERFAS:  Good afternoon, Your Honor.

10         Alan Futerfas and Ellen Resnick for Mr. Petrosyants,

11  who is present in court.

12         MR. FROCCARO:  Judge, James Froccaro for Robert

13  Petrosyants.

14         THE COURT:  All right.  Let's take Mr. Froccaro

15  next.  I have the plea agreement in front of me.  I have

16  marked it as Court Exhibit number three.  Were we left off, I

17  think we officially explored everybody's rights and we had a

18  full discussion about that.  We were ready to actually deal

19  with the actual plea, the allocution.

20         Correct?

21         MR. FROCCARO:  I believe so, Your Honor.

22         THE COURT:  Okay.  The plea agreement I have here in

23  respect to Robert also stretches for nine pages and I turn to

24  the last page and, Mr. Froccaro, I see your handsome signature

25  on the bottom, such as it is.  Ms. Notopoulos, I see yours,

1    and Robert Petrosyants, you have a unique signature also.

2        Is this the way you sign your name?

3        THE DEFENDANT R. PETROSYANTS:  Yes.

4        THE COURT:  That's it.  Okay.

5        Have you read this carefully?  You understand

6    English?  You are able to read it fully?

7        THE DEFENDANT R. PETROSYANTS:  Sure.

8        THE COURT:  I'm sure Mr. Froccaro explained

9    everything to you with meticulous care.

10       THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

11       THE COURT:  If you have any questions about anything

12    that was said so far or about anything that's contained in

13    this plea agreement, feel free to ask me at this particular

14    time.

15       THE DEFENDANT R. PETROSYANTS:  Yes.

16       MR. MOSLEY:  Your Honor, may have one second?

17       Just for the record, in our haste on Friday, it may

18    have been said that the government had agreed to narrow the

19    scope of the CTR conspiracy from something other than what was

20    listed in the charging documents.  I just wanted to put on the

21    record that is not the case.

22       MR. FROCCARO:  You are talking about the date?

23       MR. MOSLEY:  Just the date.

24       MR. FROCCARO:  Okay.

25       THE COURT:  All right.  In the plea agreement, let

1  me point out a few matters to you.

2        You are pleading, or you are agreeing in paragraph

3  one to plead guilty to an information to be filed charging

4  conspiracy under 18 USC 371. I have the waiver of indictment

5  here.

6        This is your signature?

7        MR. FROCCARO: That is correct, mine and

8  Mr. Petrosyants's.

9        THE DEFENDANT R. PETROSYANTS: Yes.

10       THE COURT: So you understand that you have the

11  right to proceed and have the grand jury decide whether you

12  should be indicted. But you are waiving that of our own free

13  will.

14       There is no question about that? On.

15       THE DEFENDANT R. PETROSYANTS: Yes, Your Honor.

16       THE COURT: Nobody forced you to do that?

17       You understand your rights. You could have gone

18  before the grand jury. You are not going to have that

19  opportunity now by reason of this waiver.

20       You understand that? You are giving up that right.

21       THE DEFENDANT R. PETROSYANTS: Yes, Your Honor.

22       MR. FROCCARO: Judge, I apologize for jumping in.

23  Something we had to put on the record, it will be applicable

24  to all three defendants. It deals with the immigration issue,

25  if I can just put this on the record with Your Honor's

1  permission.

2        THE COURT:  Why don't we just go through this

3  proceeding first.  Then you can put whatever you want on the

4  record.  Let's not jump the gun.  We discussed immigration

5  already the last time as well.

6        The conspiracy count to which you wish to plead is

7  the conspiracy to file false CTRs, right?

8        THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

9        THE COURT:  The maximum term of imprisonment for

10  that would be five years; no minimum term of imprisonment.

11        Also, the statute provides for supervised release, a

12  maximum of three years to follow any term of imprisonment

13  which may be imposed upon you, and also provides if a

14  condition of release is violated you may be sentenced to up to

15  two years without any credit for previous imprisonment or time

16  previously served on post release supervision.

17        There is a provision in the statute for a maximum

18  fine of half a million dollars.

19        Restitution is applicable.  It will be in an amount

20  to be determined by the Court.  I mentioned there may be some

21  restitution involved here, I suspect.

22        MR. FROCCARO:  No.

23        MR. MOSLEY:  Just forfeiture.

24        THE COURT:  Just forfeiture?

25        MR. MOSLEY:  Yes.

1        THE COURT:  There is the criminal forfeiture.
2  That's set forth in paragraphs six through thirteen of the
3  plea agreement.

4        There is a one-hundred-dollar special assessment
5  required by law.

6        Then you face the prospect of removal or deportation
7  as set forth in paragraph 14.

8        Mr. Froccaro is champing at the bit to say something
9  about deportation.  So you can do so at this time.

10       MR. FROCCARO:  Judge, I am going read from it so I
11  don't screw it up.

12       Mr. Petrosyants's plea as well as the other three
13  defendants --

14       THE COURT:  What are you reading from?

15       MR. FROCCARO:  From my own little statement.

16       THE COURT:  This is not --

17       MR. FROCCARO:  This is not in the agreement.  It is
18  something that Mr. Petrosyants as well as the other two
19  codefendants' pleas under 18 USC 371 arises solely under the
20  first clause of that statute.  Specifically, that
21  Mr. Petrosyants and the others conspired to commit an offense
22  against the United States.

23       We just wanted that to be clear, Your Honor, for the
24  record.

25       THE COURT:  That's what the charge is.

1       MR. FROCCARO:  Correct.

2       THE COURT:  All right.  With respect to immigration,

3  I am going to read paragraph 14.  We spoke about this the

4  other day with respect with Mr. Goletiani.  It is important

5  that you are given proper notice of the immigration

6  consequences now.  Here is what the agreement provides.

7       That the defendant recognizes that pleading guilty

8  may have consequences with respect to the defendant's

9  immigration status if the defendant is not a citizen of the

10 United States.  Under federal law, a broad range of crimes are

11 removable offenses, including the offense to which the

12 defendant is pleading guilty.  Removal and other immigration

13 consequences are the subject of a separate proceeding,

14 however, and the defendant understands that no one, including

15 the defendant's attorney, or the district court, can predict

16 with certainty the effect of the defendant's conviction on the

17 defendant's immigration status.  The defendant nevertheless

18 affirms that the defendant wants to plead guilty regardless of

19 any immigration consequences that the defendant's plea may

20 entail even if the consequence is the defendant's automatic

21 removal from the United States.

22       So, Robert, do you understand that clearly?

23       MR. FROCCARO:  Judge, this is something else we put

24 on the record on the proceeding on Friday.  We are not

25 agreeing that's a removable offense.  It may be and he

1  understands that.

2  THE COURT:  I just want him to understand that I

3  read to him the entirety of paragraph 14.

4  Do you understand what it says?

5  THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

6  THE COURT:  Do you have any questions about that?

7  Mr. Froccaro, do you have a question about this?

8  MR. FROCCARO:  I don't.  We are not agreeing that

9  it's a removable offense.  There may be a removable offense.

10  THE COURT:  There is nothing in the agreement that

11  says it is a removable offense.  It certainly may be.

12  MR. FROCCARO:  I agree.

13  THE COURT:  If it turns out to be that way, he is

14  going to be removed and he can't come back here and say that I

15  want to change my plea.  That's the important thing.

16  MR. FROCCARO:  We understand.

17  THE COURT:  You all understand that?

18  THE DEFENDANT R. PETROSYANTS:  Yes.

19  MR. FUTERFAS:  Yes.

20  MR. FROCCARO:  Yes.

21  THE COURT:  The plea agreement also provides in

22  paragraph two that for an estimated total offense level of 25

23  under the Sentencing Guidelines and speaks about the level

24  carrying a range of 41 to 51 months, assuming that you are in

25  criminal history Category 1.  That contemplates getting

1   appropriate acceptances of responsibility, and I suspect that

2   is forthcoming.  So it would be an estimated range of 41 to 51

3   since you have accepted responsibility now.

4         The important thing is to understand that that

5   estimate is not binding on anyone.  It is just an estimate.

6   You can't come back and say if you are sentenced beyond

7   51 months that you want to change your plea and withdraw your

8   plea.  You are going to have to just take your chances because

9   it is the Court that is going to sentence you.  I am not

10   making any promises as to what your sentence will be.

11         If I sentence you to above 51 months, then that may

12   happen.  I can't tell you now.  I may sentence you to below

13   41 months.  I could sentence you to above 51 months.  I could

14   sentence you to any range, actually.  I can't tell you now

15   what it is going to be because I need to get the presentence

16   report and I need to gather all the information that's

17   relevant for me to make an intelligent and correct sentence.

18         The important thing, Robert, and I will say this

19   also to Zhan, is that you understand that it's up to the Court

20   to impose sentence and anything in this agreement that you

21   have cannot be relied upon if I do not sentence you within the

22   range estimated in this agreement.

23         Do you understand that?

24       THE DEFENDANT R. PETROSYANTS:  Yes.

25       THE DEFENDANT Z. PETROSYANTS:  Yes.

1    THE COURT:  You understand that as well?

2    THE DEFENDANT Z. PETROSYANTS:  Yes.

3    THE COURT:  I will ask you, Mr. Zhan, at the same

4    time.

5    The Office -- well, in paragraph four you have

6    agreed that you are not going to challenge the conviction or

7    the sentence if I impose a term of imprisonment of 57 months

8    or below.  That probably will be what will happen but we don't

9    know now.  If I impose a sentence in excess of 57 months, then

10    your rights to appeal are intact.  Otherwise, you waive them.

11    Do you understand that?

12    THE DEFENDANT R. PETROSYANTS:  Yes.

13    THE COURT:  In paragraph five the Office has made

14    certain agreements.  You know that no further criminal charges

15    will be brought against you for health care fraud, money

16    laundering, filing false currency transaction reports, for the

17    period may 2009 through June 2011, and that goes on to explain

18    to you what your rights are in respect to what the government

19    has agreed.

20    The Office will also make no motion for an upward

21    departure under the Sentencing Guidelines.  That doesn't mean

22    that I am restricted by that.  I can sentence you to above the

23    guidelines or anything that I think is appropriate.  The

24    Office is not going to be allowed though to make an

25    application that you receive an upward departure.

1          You understand that, right?

2          THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

3          MR. FUTERFAS:  Your Honor, in that agreement I

4    think -- excuse me, Your Honor -- in paragraph 5-A, I think

5    there is something handwritten in, if Your Honor sees that, in

6    that agreement.

7          MS. NOTOPOULOS:  Just tell him --

8          THE COURT:  Structuring?

9          MR. FUTERFAS:  I want to make sure that it was clear

10   on the record.

11         THE COURT:  Then you have the forfeiture provisions

12   that are set forth in paragraphs seven, eight, nine -- six, I

13   guess, through 13.

14         MR. MOSLEY:  I believe 13, Your Honor.

15         THE COURT:  I am not going to read all of that to

16   you.  If there is anything there that you don't understand,

17   here is your opportunity to ask me.

18         Robert, anything at all?

19         THE DEFENDANT R. PETROSYANTS:  No, Your Honor.

20         THE COURT:  I might as well ask you at the same

21   time, Zhan, since what I just read here also is applicable to

22   your plea agreement as well.

23         Correct?

24         MR. FUTERFAS:  Yes, Your Honor.

25         The only differences are our guidelines calculations

1    are a little bit different.

2          THE COURT:  We will go through that.

3          So far what I have explained to you, that's common

4    to both of you.  You are in agreement?

5          THE DEFENDANT Z. PETROSYANTS:  Yes.

6          MR. FUTERFAS:  Your Honor, the only other add we

7    have, Your Honor, is with respect to -- there is an amount of

8    forfeiture amount, of $667,000.

9          THE COURT:  Let's deal with Robert.

10         MR. FUTERFAS:  Fair enough.

11         THE COURT:  Is there any amount mentioned in his?

12         MR. FROCCARO:  It's the same, Judge.

13         The point --

14         THE COURT:  It is in paragraph six.  It says the

15   defendant consents to the entry of a forfeiture money judgment

16   in the amount of $667,446.08.  That's going to be the

17   judgment.

18         Do you understand that?

19         THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

20         THE COURT:  There is no restitution here.  It will

21   all go for forfeiture.

22         MR. MOSLEY:  That is correct, Your Honor.

23         MR. FUTERFAS:  Your Honor, the point -- that's

24   common to both defendants.

25         MR. FROCCARO:  All three, Judge.

1        MR. FUTERFAS:  All three defendants, actually, that

2  amount of money, which is referenced in the plea agreement,

3  both --

4        THE COURT:  Joint and several?

5        MR. FUTERFAS:  Yes, Your Honor.

6        MR. MOSLEY:  Yes, Your Honor.

7        THE COURT:  Is that what you are about to tell me?

8        MR. FUTERFAS:  No.  Actually something -- that

9  amount of money, the forfeiture amount, 667,446.08 referenced

10  both as to the forfeiture matters and the guidelines

11  calculation is solely determined by the amount of checks

12  cashed.  I just wanted Your Honor to know where that amount

13  comes from for those.

14        THE COURT:  Do you feel better having said that?

15        MR. FUTERFAS:  Actually, we do.

16        MR. FROCCARO:  I am glad he said it.

17        MR. TALKIN:  I feel so much better.  I want to join

18  in that application.

19        THE COURT:  That's why you came back.

20        MR. TALKIN:  Every application that's applicable.

21        MR. MOSLEY:  Your Honor, I would like to feel good

22  as well.  Any comments we made about whether or not the

23  forfeiture is joint and several we leave open for the time

24  being.  We are not making a representation.

25        THE COURT:  There is no representation on that.

1   What is it going to be actually?

2          MR. FROCCARO:  That's the number.  That's the

3   number, Judge.

4          THE COURT:  Each?

5          MR. FROCCARO:  Forfeiture, joint and several.

6          THE COURT:  Joint and several?

7          MR. FROCCARO:  Yes.

8          THE COURT:  Is that provided for in the agreement?

9          MR. FROCCARO:  There is no restitution.

10          MS. NOTOPOULOS:  Restitution is joint and several.

11          THE COURT:  It's one forfeiture sum of

12   667-et cetera, right?  It is not going to be a million-eight?

13          MR. MOSLEY:  It's the number that's in the

14   agreement, Your Honor.

15          THE COURT:  Yes.  So it's going to be joint and

16   several.  You collect only that amount of money.

17          You can go after any of these three folks to get it,

18   right?

19          Do you understand what I am saying?

20          Are you confused about that?

21          MR. MOSLEY:  That is right.

22          THE COURT:  That's right?

23          MR. MOSLEY:  Yes.

24          THE COURT:  It's not a million-eight?

25          MR. MOSLEY:  It's not.

1     THE COURT:  We should be clear about that.

2     Yes?

3     MR. MOSLEY:  Yes, we are clear, that it is not a

4  million-eight.

5     THE COURT:  All right.  So what that means I guess

6  to all of you is that the government can get that amount of

7  money from Robert, if they can get it all from Robert, all

8  from Zhan, all from Lasha, or wherever it can get the money

9  between the three of you.  You may have claims against each

10  other that are a civil matter, nothing to do with the criminal

11  proceeding.  They can grab that money from wherever they can

12  get it.

13     Correct?

14     You are laughing because you don't have the money,

15  right?

16     THE DEFENDANT R. PETROSYANTS:  Exactly.

17     MR. FUTERFAS:  We understand.

18     THE COURT:  Who has the money here?

19     THE DEFENDANT Z. PETROSYANTS:  Lawyers.

20     MR. MOSLEY:  Certainly not the government.

21     THE COURT:  Have you gotten any of it yet?

22     MS. NOTOPOULOS:  No, Your Honor.

23     THE COURT:  Any preliminary forfeiture that you are

24  able to get hold of?

25     MR. MOSLEY:  For that particular sum of money, no,

1  Your Honor, not yet.

2        THE COURT:  Have you gotten any of it yet?

3        MR. MOSLEY:  Not that money yet.

4        MR. TALKIN:  There has been --

5        MS. NOTOPOULOS:  Your Honor --

6        MR. TALKIN:  There was some money taken at the time.

7        MS. NOTOPOULOS:  If I may interject?

8        THE COURT:  Is there a preliminary order of

9  forfeiture?  So you don't have the money yet?

10        MS. NOTOPOULOS:  Correct.

11        If I can interject personally?  Obviously,

12  restitution is joint and several.  No victim will be unjustly

13  enriched.  I believe forfeiture is along the lines of a

14  punishment.  For example, we took a plea, a related plea

15  earlier where the government seized $3 million I believe was

16  the figure.  That doesn't affect these defendants' obligation

17  to pay forfeiture.  It's related to -- it's a punishment for

18  the crime.

19        THE COURT:  We have to decide with clarity what this

20  agreement provides for.

21        MS. NOTOPOULOS:  I think the agreement is clear.  It

22  does not say joint and several.

23        THE COURT:  That's why we are having this little

24  chat.  It is important for us to understand.  We have a

25  difference of opinion.  Your forfeiture maven here is a little

1 confused as to what the forfeiture is all about.

2      MR. FUTERFAS:  I thought the government just agreed

3 with Your Honor that was joint and several and the government

4 was not seeking 1.8.

5      THE COURT:  They are a little confused.

6      MS. NOTOPOULOS:  Your Honor, let's just say this.

7 Worst case scenario, it's not joint and several.  My

8 distinguished colleague from the Asset Forfeiture section --

9      THE COURT:  He is the expert.

10      MS. NOTOPOULOS:  Yes.

11      He believes it is joint and several.  Who am I to

12 question, Judge?

13      THE COURT:  The agreement does not provide for joint

14 and several.  The agreement says each person is responsible

15 for that forfeiture.

16      MS. NOTOPOULOS:  That's what it says.

17      THE COURT:  That's the way it is written.  We are

18 here to have an intelligent allocution to make sure there is

19 no possible confusion.  We have now injected confusion into

20 these proceedings.  Let's see whether we can straighten it

21 out.  We have the expert here from the civil forfeiture

22 department.  These are really people who are experts here,

23 right?

24      (Pause.)

25      We've now had some further discussion between

1    counsel and the government.  Let's see if we can come to an

2    agreement as to what is happening.

3            MR. FROCCARO:  Judge, I wish could report to Your

4    Honor.  I thought the asset forfeiture fellows had agreed.

5    But -- why don't I let them speak, Judge.

6            THE COURT:  You signed an agreement that provides

7    each of you individually to be liable.  There is nothing that

8    says joint and several.  If you want it to be changed to joint

9    and several, if that's what you agreed, I will do it.

10           You folks can't agree.

11           MR. FROCCARO:  That's what we thought the spirit of

12   the agreement was.

13           THE COURT:  We have our expert from the forfeiture

14   department here.  That's all they do.  They are outstanding.

15           MR. MOSLEY:  I am a money laundering guy.  I am the

16   money laundering part of the asset and forfeiture section.  I

17   think the agreement says what it says.

18           THE COURT:  I am going to say it is joint and

19   several.  You guys dodged the bullet.  The government is

20   confused.  I'd rather err on the side of lenity when the

21   government is confused.

22           So it is joint and several.  It is understood even

23   though it is not in the agreement.

24           You guys have the benefit of having outstanding

25   lawyers, how fortunate you are.

1          Let's take it one at a time.

2          You, Robert, I will ask you, anything else about

3  this agreement that we should discuss?

4          THE DEFENDANT R. PETROSYANTS:  No, Your Honor.

5          THE COURT:  You are clear?

6          THE DEFENDANT R. PETROSYANTS:  Yes.

7          THE COURT:  You don't have the money so it's

8  academic, right?  We will deal with that.  We will flesh it

9  all out at sentencing.

10          THE DEFENDANT R. PETROSYANTS:  I am the wrong guy.

11          THE COURT:  You will explain to the Court where the

12  money went.

13          You wish to plead to this count of conspiracy that's

14  set forth in the underlying information?

15          THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

16          THE COURT:  Okay.  You know what conspiracy means.

17  It means that you entered into an agreement with somebody

18  else, one or more people, to accomplish an unlawful goal or

19  scheme, and that you took actions in respect to that

20  conspiracy, to achieve that scheme.

21          Do you understand that?

22          THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

23          THE COURT:  Tell me what you did here to justify

24  your pleading guilty to this conspiracy.

25          THE DEFENDANT R. PETROSYANTS:  In or about

1  June 2011, I agreed with others, for purpose of evading the

2  CTR reporting request -- requirements, to cause Belair Payroll

3  Services, a check cashing company located in Queens, New York,

4  for the false -- for -- to file false CTRs.  In furtherance of

5  this conspiracy, on or about May 31, 2011, I agreed with

6  others that Belair would be presented with one or more checks

7  to cash in an amount exceeding $10,000.  I further

8  agree -- further agreed that Belair would cash those checks

9  but not identify on the CTR they had to file the name of the

10  person presenting those checks for cashing.

11        THE COURT:  You wish to plead guilty and you are

12  pleading guilty to that count, correct?

13        THE DEFENDANT R. PETROSYANTS:  Yes, Your Honor.

14        THE COURT:  Has anybody forced you to plead guilty

15  or to make this allocution that you just made?

16        THE DEFENDANT R. PETROSYANTS:  No, Your Honor.

17        THE COURT:  You are doing this of your own free

18  will?  No one has coerced you?

19        THE DEFENDANT R. PETROSYANTS:  No, Your Honor.

20        THE COURT:  Has anybody made any promises to you

21  about what your sentence would be other than the things we

22  discussed here in court today and what's contained in the plea

23  agreement?

24        THE DEFENDANT R. PETROSYANTS:  No, Your Honor.

25        THE COURT:  Nothing else happened?

1            THE DEFENDANT R. PETROSYANTS:  No, Your Honor.

2            THE COURT:  Okay.  I find that there is a basis for

3 your plea and I will accept the plea of guilty and I think

4 that takes care of Robert.

5            Okay.  Now, Zhan, front and center.  I've got your

6 plea agreement which was marked Court Exhibit number two,

7 February 21st, also runs for nine pages.

8            Is this your signature?  You signed it?

9            THE DEFENDANT Z. PETROSYANTS:  Yes, sir.

10            THE COURT:  No question about it?  And this is

11 Mr. Futerfas's signature on this document as well?

12            MR. FUTERFAS:  Yes, Your Honor.

13            THE COURT:  It's one of the legible signatures that

14 I can read here.

15            You read this and you understand everything in it?

16            THE DEFENDANT Z. PETROSYANTS:  Yes.

17            THE COURT:  A lot of this has been discussed already

18 when we talked about what the agreement contains in respect to

19 your colleagues here.  But there may be some things here

20 that -- apparently there are a few things here that just apply

21 to you.  Let's go through it all.

22            You are going to be pleading to guilty to Count Two.

23 That's also the conspiracy, and you have a two-count

24 indictment here.  The first one is money laundering and I

25 guess that's going to be dismissed, right?

1          MR. FUTERFAS:  Yes, Your Honor.

2          THE COURT:  So you also are pleading to the same

3    conspiracy.

4          THE DEFENDANT Z. PETROSYANTS:  Yes.

5          THE COURT:  All right.  Because of that, you have

6    the same term of imprisonment of five years, minimum term of

7    zero; maximum supervised term of three years to follow any

8    term of imprisonment.

9          If a condition of release is violated, you may be

10   sentenced to up to two years without credit for prerelease

11   imprisonment or time previously served on post release

12   supervision.

13         The statute is the same for all of you.

14         The maximum fine is half a million dollars.

15         We are not dealing with restitution here.

16         You have a criminal forfeiture.  We went through

17   that.

18         In paragraphs six through thirteen, the same

19   language appears in respect to the forfeiture in regard to

20   Lasha and Robert as well.

21         You understand that.

22         Special assessment.

23         Then you have this removal.  Your lawyers have

24   talked about the fact that you may be subject to removal.  You

25   heard me read paragraph 14 carefully about that.  It's

1  important that you understand that you are going to be

2  exposing yourself to possibly being removed by pleading guilty

3  and that whether you will be or not is not for me to decide.

4  It is a different process.  But if you are removed, you can't

5  come back and say Judge, I want to withdraw my plea here.  I

6  didn't realize that I could be removed.  That's the important

7  thing for you to understand.

8           THE DEFENDANT Z. PETROSYANTS:  I do.

9           THE COURT:  Any question about that?

10          THE DEFENDANT Z. PETROSYANTS:  No.

11          THE COURT:  In paragraph two, you have a different

12 range here that's estimated of imprisonment.  Yours is 33 to

13 41 months.

14          Why is yours a little different?  There must be a

15 reason.

16          MR. MOSLEY:  There is a role adjustment, Your Honor.

17          MR. FUTERFAS:  There is no role adjustment for

18 Mr. Zhan Petrosyants.  I think there was --

19          MR. MOSLEY:  There was a role adjustment for Robert

20 that does not apply to Zhan.

21          THE COURT:  I won't get into that.  He understands

22 that.

23          The important thing is that nothing here is binding

24 upon me.  Just the same advice that I gave to your colleagues

25 here, your coconspirators, that it is up to me to decide what

1  your sentence would be.  So you can't come back and say that

2  Judge, you can't sentence me to a range of imprisonment higher

3  than the estimate.  I may not do that.  But it is important

4  for you to understand that you are trusting me completely with

5  the sentencing.  You are not going to be able to withdraw the

6  guilty plea if I sentence you to a higher range, assuming that

7  I sentence you lawfully.  If I sentence you unlawfully, then

8  you have rights.

9         Paragraph five, the Office agrees -- the same thing

10  we just read before -- that there will not be charges against

11  you for health care, money laundering, structuring is written

12  in there, filing false currency transaction reports, for the

13  period of May 2009 through June 2011 as detailed here.

14         The government is taking no position where within

15  the guideline range the Court should sentence you and makes no

16  motion for upward departure.

17         That's the same agreement that it made in respect to

18  your coconspirators as well.  That doesn't mean that I can't

19  impose a sentence that's outside the guideline range or an

20  upward departure.  That's my call.  You should understand

21  that.

22         Any questions at all about anything in this

23  agreement?

24         THE DEFENDANT Z. PETROSYANTS:  No, Your Honor.

25         THE COURT:  All right.  You have the opportunity to

1　ask me.  We flushed out the forfeiture thing.  You caught a

2　break there because I just have given you the benefit of the

3　uncertainty manifested by our experts from the forfeiture

4　department.  So it's collectively 667-whatever.  The

5　government can get that money from you or any of your

6　coconspirators.  They can get it all from you, partly from

7　you.  They have the right to go after whatever money they can

8　find to satisfy the forfeiture.

9　　　　Do you understand?

10　　　　THE DEFENDANT Z. PETROSYANTS:  Yes.

11　　　　THE COURT:  At this time, how do you plead to that

12　conspiracy count, guilty or not guilty?

13　　　　THE DEFENDANT Z. PETROSYANTS:  Guilty.

14　　　　THE COURT:  Are you making that plea of guilty of

15　your own free choice and will?

16　　　　THE DEFENDANT Z. PETROSYANTS:  Yes, my own choice.

17　　　　THE COURT:  Nobody has put any pressure on you to

18　plead guilty?

19　　　　Has anybody made any representations to you as to

20　your sentence or anything else other than what's contained in

21　this plea agreement or what we discussed in court here; yes or

22　no?

23　　　　THE DEFENDANT Z. PETROSYANTS:  Nobody.

24　　　　THE COURT:  Everything is in here, the agreement;

25　nothing else, right?

1    THE DEFENDANT Z. PETROSYANTS:  Yes.

2    THE COURT:  All right.  At this time you can tell me

3    what you did in this conspiracy, which once again means that

4    you joined with others for the purpose of committing an

5    unlawful act, that you undertook action with respect to

6    accomplishing that unlawful goal.

7    What did you do?

8    THE DEFENDANT Z. PETROSYANTS:  In or about

9    June 2011, I agree with others for the purpose of avoiding CTR

10    reporting requirement to cause Belair Payroll Services, a

11    check cashing company located in Queens, New York, to file

12    false CTRs.  In furtherance of the conspiracy, on or about

13    May 31, 2011, I agreed with others that Belair would be

14    presented with one or more checks to cash in an amount

15    exceeding $10,000.  We further agreed that Belair would cash

16    those checks but not identify on the CTR it had to file name

17    of the person presenting those checks for cashing.

18    THE COURT:  I find there is a factual basis for your

19    plea.  I will accept the plea of guilty to the conspiracy

20    count and the sentencing is going to be, as I mentioned to

21    Mr. Talkin before, probably not for a few months.  Your lawyer

22    will advise you as to what extent you will cooperate with the

23    Probation Department and assist in the preparation of the

24    presentence report, which I will rely upon, and whatever else,

25    to determine what your sentence will be.  When we get the

1 presentence report we will fix the date of sentence.

2 Mr. Innelli will advise you accordingly.

3 Is there anything that may have been left out

4 inadvertently?

5 Mr. Talkin, you came here. You want to get your

6 money's worth.

7 MR. TALKIN: I would ask that you incorporate the

8 applications and the rulings that you made today into

9 Mr. Goletiani's sentencing. I had asked you Friday if you

10 would leave that open for those possibilities and you granted

11 me --

12 THE COURT: Which in particular? The forfeiture?

13 MR. TALKIN: The forfeiture as well as the comments

14 regarding the immigration issues.

15 THE COURT: All right. Fine.

16 Ms. Notopoulos, would you like to say anything at

17 this time? You are kind of quiet.

18 MS. NOTOPOULOS: No, Your Honor.

19 I am going to go research that issue.

20 THE COURT: Do you want to say anything, Mr. Warden?

21 MR. WARDEN: No, Your Honor.

22 THE COURT: You are going to go back and look at the

23 books to see if you could have gotten 1.8?

24 MR. MOSLEY: Absolutely.

25 MS. NOTOPOULOS: We are just in admiration of

1    Mr. Mosley's performance, Your Honor.  We are speechless.

2            THE COURT:  I am impressed also.  It is always good

3    to have you forfeiture experts come to court.

4            MR. MOSLEY:  Thank you, Your Honor.

5            THE COURT:  Keep up the good work.

6            Mr. Froccaro, keep smiling.

7            It was a pleasure to have all of you here.

8            We don't want to charge them $1.8 million.  The

9    lawyers have to get paid.

10           MR. FUTERFAS:  Here, here.

11           MR. FROCCARO:  Good exception to the rule.

12           MR. FUTERFAS:  We will drink to that.

13           THE COURT:  See you at the sentence.  Thank you for

14   your patience.  I am sorry you had to come back.

15           (Matter concludes.)

16

17

18

19

20

21

22

23

24

25

INDEX

COURT EXHIBITS:

Court Exhibit number three                          3

Court Exhibit number two                            22

# C E R T I F I C A T I O N

    I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled

matter.

_____

s/Gene Rudolph, Official Court Reporter

Date:   May 20, 2014